**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MELVIN BERNARD THOMPSON,**

    **Plaintiff,**

vs.                                                 **CASE NO. 4:23-CV-00311-AW-MAF**

**RICKY DIXON,
SEC'Y DEP'T OF CORR.,
et al.,**

    **Defendants,**

_____/

## **ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, Melvin Bernard Thompson, a prisoner proceeding *pro se*, filed an amended complaint, under 42 U.S.C. § 1983, a second motion to proceed *in forma pauperis* (IFP), and a motion to obtain his requisite inmate account statements and financial certificate. The Court is required to screen the complaint under 28 U.S.C. § 1915A and construes Plaintiff's allegations liberally. See Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). This case should be dismissed because the complaint is a shotgun pleading and Plaintiff affirmatively misrepresented his litigation history. Plaintiff's two motions are addressed first.

### I. Plaintiff's Motion to Proceed IFP, ECF No. 9, and Motion for Court Order, ECF No. 10, are Due to be Denied.

Plaintiff's second IFP motion, ECF No. 9, contains an implausible prisoner consent form and financial certificate. Id., p. 6. Plaintiff signed this form on July 8, 2023, *before* he filed his first IFP motion. Id.; see ECF No. 2, p. 4. The financial certificate, signed July 25, 2023, states Plaintiff's current account balance is "0"; and, for the preceding six months, his average monthly balance was $17.37, and the average monthly deposits were $91.66. ECF No. 9, p. 6. The inmate account statements tell a different story. Plaintiff receives at least $250 per month from various individuals, which is promptly spent primarily on canteen sales and media purchases. Id., pp. 7-11. His average monthly balance is approximately $55 per month. Id. Accordingly, the IFP motion shall be **DENIED**. Because Plaintiff had the correct inmate account statements to support his IFP motion, the "Motion for Court Order Directing FDOC to Provide . . . Plaintiff['s] Financial Certificate and 6 Month Statement," ECF No. 10, is due to be **DENIED AS MOOT**.

### II. Standard of Review

A federal court conducts an initial screening of a *pro se* complaint to determine whether the action: (1) is frivolous or malicious or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). "An

action is malicious when a prisoner misrepresents his prior litigation history on a complaint form requiring disclosure of such history and signs the complaint under penalty of perjury . . ." Burrell v. Moore, 854 F. App'x 624 (11th Cir. 2021); See Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998) (affirming counting as a strike under § 1915(g) an action that was dismissed for an abuse of the legal process because the inmate lied under penalty of perjury about a prior lawsuit), overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007); see also, e.g., Sears v. Haas, 509 F. App'x 935, 935-36 (11th Cir. 2013) (dismissal of action without prejudice as malicious for abuse of judicial process was warranted where inmate failed to disclose case he had filed against prison officials just five months earlier, and failed to disclose another case he filed six years earlier that had been dismissed prior to service for failure to state a claim); Jackson v. Fla. Dep't of Corr., 491 F. App'x 129, 132-33 (11th Cir. 2012) (dismissal without prejudice as malicious where plaintiff failed to disclose existence of one prior case, and disclosed existence of another prior case but still failed to disclose that it was dismissed as frivolous, malicious, failing to state a claim, or prior to service).

Federal courts have the inherent authority to *sua sponte* dismiss cases in order to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 631

(1962). Federal Rule of Civil Procedure 41(b) provides that if a plaintiff fails to comply with a court's orders, the plaintiff's claims or actions may be dismissed. Moreover, a district court "has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Servs., Inc., 556 F.3d 1232, 1240 (11th Cir. 2009) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). "A district court need not tolerate defiance of reasonable orders," and the Court may dismiss a claim without prejudice even for a minor violation of a court order. Id.; see also Dynes v. Army Air Force Exch. Serv., 720 F. 2d 1495, 1499 (11th Cir. 1983) (holding that dismissal without prejudice, even for a minor violation of a court order, was not an abuse of discretion).

This Court must ensure that its limited resources are allocated in such a manner as to protect and promote the interests of justice. A case in which a plaintiff has maliciously abused the judicial process warrants dismissal.[1]

---

[1] In general, a dismissal without prejudice does not amount to abuse of discretion. See Dynes v. Army Air Force Exch. Serv., 720 F.2d 1495, 1499 (11th Cir. 1983) (holding that dismissal without prejudice, even for a minor violation of a court order, was not an abuse of discretion). Such a dismissal should be allowed absent some plain prejudice other than the mere prospect of a second lawsuit. See Kotzen v. Levine, 678 F.2d 140 (11th Cir. 1982).

## III.     Plaintiff's Initial Complaint, ECF No. 1.

Plaintiff initiated this case on July 17, 2023, with a 67-page complaint on the wrong form. ECF No. 1. A "kitchen-sink" type of pleading, Plaintiff sued fifteen prison officials and medical personnel for incidents occurring at different prisons over a period of years. Id. Plaintiff claimed he suffered from multiple health conditions requiring various surgeries, prescription medications, and medical aids and devices. Id., pp. 8-10. Plaintiff alleged delayed medical treatment, receiving improper aids or devices, denial of certain prescriptions, and reckless driving during a medical transport. Id., pp. 9-59. Plaintiff alleged violations of his constitutional rights and the Americans with Disabilities Act, racial discrimination, negligence, and medical malpractice. Id., p. 59. Plaintiff sought specific medical treatment, monetary damages, and injunctive- and declaratory relief. Id., p. 61. Plaintiff listed some of his federal litigation history but none of his state cases challenging his conviction or relating to his conditions of confinement. Id., pp. 63-65. He also did not list any of his appeals to the Eleventh Circuit Court of Appeals or the Supreme Court of the United States.

The Court found the complaint legally insufficient and ordered Plaintiff to amend. ECF No. 5. Notably, the Court warned Plaintiff to fully disclose his litigation history and any affirmative misrepresentations would result in

dismissal. Id., pp. 8, 16-17. Plaintiff had until August 21, 2023, to amend, which was extended until September 21, 2023. ECF Nos. 5, 7.

## IV. Plaintiff's Amended Complaint, ECF No. 8.

Plaintiff names only four defendants: the Florida Department of Corrections (FDOC) secretary and Dr. Reimer, the FDOC Health Services Medical Director, in their official capacities; Dr. Brenes-Catinchi, in his individual- and official capacities; and Pamela Carlson, a nurse practitioner, in her individual capacity. ECF No. 8, pp. 1-4.

Plaintiff claims he has chronic medical conditions including osteonecrosis, tendonitis, shoulder impingements, "tenosynovitis-trigger fingers," shingles, post-herpetic neuralgia, and degenerative bone disease all of which are painful. Id., p. 6. Plaintiff also has diabetes and high blood pressure. Id., p. 8. Plaintiff admits that he received various treatments and therapies to assist with pain management including over-the-counter (OTC) medications, prescription strength "NSAID" medications, physical therapy, steroid injections, and steroid pills. Id. Due to his chronic conditions, on February 7, 2020, Plaintiff was transferred to an "intensive care" facility at Region III Central Florida Reception Center (CFRC). Id., p. 7. Fellow inmates warned him not to file any grievances or he would suffer retaliation. Id.

In April 2020, Plaintiff suffered "flare ups," and sought medical care but

was told he would have to reestablish his medical conditions. Id. Plaintiff filed a grievance that the procedure was unconstitutional; and Dr. Brenes-Catinchi denied it. Id. On July 8, 2020, Dr. Brenes-Catinchi examined Plaintiff and questioned him about the grievances. Id. Plaintiff said he was trying to get medical treatment but was not receiving it. Id. The doctor also questioned Plaintiff about his refusal of physical therapy. Id., p. 8. Plaintiff insisted that physical therapy, OTC medications, and NSAIDs were failed therapies; he would be willing to resume physical therapy "after the pandemic"; and explained he wanted steroid pills and injections because other treatments failed. Id. Dr. Brenes-Catinchi refused to prescribe the steroids given Plaintiff's A1C/blood sugar levels but authorized NSAIDs (Salsalate) and OTC medications. Id., pp. 8-9. Plaintiff alleges this was the equivalent of having "no treatment." Id. The same routine continued in August 2020. Id., p. 9. Plaintiff complained Salsalate was ineffective. Id. Dr. Brenes-Catinchi said injections might be appropriate following an x-ray of the shoulder but did not prescribe them. Id.

    Plaintiff declared medical emergencies due to pain on September 2 and 9, 2020, but did not get to see a "clinician," Defendant Carlson, until September 21. Id. Carlson told Plaintiff that Dr. Brenes-Catinchi directed her to refuse the steroid injections and to offer Plaintiff physical therapy and

NSAIDs instead. Id. Plaintiff's x-rays were reviewed around September 12th. Id., p. 8. Plaintiff received the same information from the director of nursing and the supervisor of nursing: Dr. Brenes-Catinchi would not authorize steroid treatments or preferred pain medications until Plaintiff agreed to physical therapy. Id., p. 10.

Plaintiff claims that by the end of December 2020, his pain was so acute he could not sleep. Id. This was apparently from contracting shingles which was untreated for eleven days. Id. The shingles infection caused painful sores and "ate a hole" in Plaintiff's skin. Id. Plaintiff again sought pain medications from Defendant Carlson, specifically, Gabapentin, but Carlson told Plaintiff the supervisors would not authorize it. Id. In February 2021, Dr. Baptiste prescribed Plaintiff a steroid injection. Id., p. 11. Plaintiff was transferred to Regional Medical Center (RMC) and received steroid pills and various pain medications, including Gabapentin. Id. It is not clear whether Dr. Baptiste treated Plaintiff at CFRC or RMC. Still, Plaintiff remained at RMC for approximately one year, until he was transferred back to CFRC in February 2022. Id.

The old routine resumed upon Plaintiff's return to CFRC. Gabapentin was not approved for treatment according to the facility's policy, even with an active prescription; and Dr. Brenes-Catinchi would not approve an

exception. Id. Plaintiff's Gabapentin prescription ended April 26, 2022. Plaintiff declared a medical emergency on May 1, and was told by various clinicians that Gabapentin would not be approved. Id., p. 12. Eventually, on June 6, 2022, Plaintiff received two doses of Gabapentin, but Dr. Brenes-Catinchi stopped it.

Soon afterward, Plaintiff returned to RMC. Id. In July 2022, a clinician told Plaintiff Gabapentin was not available due to cost concerns. After filing a grievance and complaints from his family to a state representative, in August, Plaintiff received a dose of Gabapentin. Id. In September 2022, Plaintiff was transferred back to CFRC. Id., p. 13. Dr. Brenes-Catinchi still refused to approve the prescription. Id. Plaintiff received Gabapentin on October 4; and his last dose was in late November 2022. Id. The regional director of CFRC would not approve Gabapentin. Id. So, Plaintiff did not receive Gabapentin again until April 2023, when he returned to RMC. Id.

Plaintiff claims the FDOC secretary and Dr. Reimer knew of the denial of Plaintiff's grievances but failed to intervene. Id., p. 14. Plaintiff alleges deliberate indifference to his serious medical needs, violation of his constitutional rights, retaliation, and criminal violations. Id., pp. 15, 17-18. Plaintiff seeks declaratory relief, a private specialist for orthopedic and neurological pain management, compensatory damages, punitive damages,

a referral to state authorities to criminally prosecute Defendants' abuse of a disabled adult, and other relief.

## V. Shotgun Pleadings Not Permissible

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and alterations omitted). "Further, the allegations in the complaint 'must be simple, concise, and direct,'" Fed. R. Civ. P. 8(d)(a), and the complaint must 'state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances,' Fed. R. Civ. P. 10(b)." LaCroix v. W. Dist. Of Ky., 627 F. App'x 816, 818 (11th Cir. 2015).

"A 'shotgun pleading' – one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief' – does not comply with the standards of Rules 8(a) and 10(b)." Id. (citations omitted). The Eleventh Circuit "has repeatedly condemned shotgun pleadings." Id. (citing PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010)). Vague pleadings which assert legal conclusions rather than facts violate Rule 8 and are insufficient to proceed.

The Eleventh Circuit has identified four rough types or categories of shotgun pleadings. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). The most common type is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Id. at 1321. Next, is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. The third type of shotgun pleading does not separate "into a different count each cause of action or claim for relief." Id. at 1323.

"Fourth, and finally, there is" the pleading which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. "The unifying characteristic . . . is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id.

Here, Plaintiff does not attribute specific acts or omissions to either the FDOC secretary or Dr. Reimer. Legal conclusions are insufficient. Plaintiff seeks to pursue claims against them solely on a theory of vicarious liability.

The Court previously advised Plaintiff that such claims would be dismissed. ECF No. 5., pp. 5-7. "(L)iability under § 1983 may not be based on the doctrine of *respondeat superior*." Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003); see Denno v. Sch. Bd. of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000), cert. denied, 531 U.S. 958 (2000). Instead, a government entity may be liable "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted).

Plaintiff does not establish that an official FDOC policy or custom was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978). The custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Craig, 643 F.3d at 1310 (citation omitted). Plaintiff also has no standing to litigate alleged criminal offenses. Those claims are squarely foreclosed by Supreme Court precedent. It is well settled that citizens in Plaintiff's position do not have a constitutional right to have police officers arrest another citizen. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having

someone else arrested for a crime generally does not trigger protections under the Due Process Clause . . ."); DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); see also Lovins v. Lee, 53 F.3d 1208, 1209 (11th Cir. 1995). With no federal right supporting the claim, there is no basis for relief under Section 1983. See Robertson v. Hecksel, 420 F.3d 1254, 1261 (11th Cir. 2005).

Ordinarily, a plaintiff has a right to amend his complaint; however, Plaintiff already did so and is not entitled to multiple amendments. This is particularly true when Plaintiff did not fully disclose his litigation history in either complaint after warnings that failure to do so would result in dismissal.

## VI. Plaintiff's Affirmative Misrepresentations

Plaintiff is no stranger to federal- or state courts. Plaintiff is serving a life sentence resulting from his convictions in Leon County Case No. 95-CF-02874. On the complaint form, Section VIII. PRIOR LITIGATION, advises:

> ***This section requires you to identify your prior litigation history. Be advised that failure to disclose all prior state and federal cases—including, but not limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case. You should err on the side of caution if you are uncertain whether a case should be identified.***

ECF No. 8, p. 19. Twice, Plaintiff did not fully disclose his litigation history. In the amended complaint, Plaintiff listed several of his federal cases.[2] Some were duplicated, perhaps, because Plaintiff thought certain cases were pertinent to more than one question.[3] Id., pp. 20-24. Plaintiff also listed several state appeals relating to his underlying conviction. Id., p. 24. However, Plaintiff did not disclose *all* appeals (both federal and state) though he is required to do so under the penalty of perjury.

Section VIII, Question C asks, "Have you filed any other lawsuit, habeas corpus petition, or appeal in state or federal court either challenging your conviction or relating to the conditions of your confinement?" Id., p. 21. Plaintiff answered, "Yes." Id. Plaintiff disclosed one of his appeals to the Eleventh Circuit, namely, Thompson v. Sec'y Fla. Dep't of Corr., No. 18-10623-H. Id., pp. 20, 23. Plaintiff did not disclose a second Eleventh Circuit case, Thompson v. Windsor, in which he appealed this Court's decision in a

---

[2] One of the cases Plaintiff disclosed was filed in the Middle District of Florida, Thompson v. Isra and Anandijiwali, but he did not provide the case number. ECF No. 8, p. 21. Plaintiff claimed that he could not locate this case on Lexis Nexis. Id. Because Plaintiff attempted to disclose this case, it is not considered an affirmative misrepresentation. Still, the court will not provide the case number because it is Plaintiff's responsibility to fully disclose his litigation history. Federal case information is available on PACER.gov.

[3] The following cases were duplicated on Plaintiff's complaint form: Thompson v. Sec'y Dep't of Corr., 11th Cir. No. 18-10623 (ECF No. 8, pp. 20 and 23); Thompson v. Sec'y Dep't of Corr., N.D. Fla. No. 4:15-cv-00254 (ECF No. 8, pp. 20 and 22); Thompson v. McNeil, N.D. Fla. No. 4:07-cv-407 (ECF No. 8, pp. 20 and 22).

Section 1983 action against several prison doctors at RMC Lake Butler.[4] Similarly, Plaintiff listed several state appeals related to his underlying conviction but he did not list the 2011 appeal challenging his resentencing.

Plaintiff stated he does not have the documents anymore and cannot locate all the information on Lexis Nexis. Id., p. 24. All federal cases in the United States District Courts and the Eleventh Circuit Court of Appeals are easily accessible on PACER.gov. Similarly, the case numbers for all the appeals related to Plaintiff's conviction appear on the state's docket of the criminal case itself, which is conveniently available online from the Leon County Clerk. Thus, it is not a difficult task for Plaintiff to get the information he needed to make proper disclosures to the Court. The Court will not assume Plaintiff's responsibility to disclose his litigation history by providing him a list of the missing case numbers and additional case details.

Prisoners are required to accurately disclose their litigation history on the complaint form under the penalty of perjury. Any affirmative misrepresentations constitute an abuse of the judicial process warranting dismissal of the case without prejudice as "malicious" under §§ 1915(E)(2)(B)(i) and 1915(b)(1). See Ealy v. CCA, 2015 U.S. Dist. LEXIS

---

[4] See N.D. Fla. Case No. 5:09-cv-00073-RS-EMT, Thompson v. Windsor, et al., which Plaintiff properly disclosed. ECF No. 8, p. 22.

Case No. 4:23-CV-00311-AW-MAF

173850, 2015 WL 9647546, at *1 (N.D. Fla. Dec. 18, 2015) (collecting Eleventh Circuit cases affirming dismissals without prejudice where plaintiffs failed to disclose their prior litigation history). When an action is dismissed for abuse of the judicial process, it counts as a strike for Section 1915(g) purposes. Pinson v. Grimes, 391 F. App'x 797, 799 (11th Cir. 2010) (unpublished).

As a matter of course, the Court attempts to make an independent investigation into whether litigants truthfully completed this section of the form. The time spent verifying the cases a plaintiff filed but failed to identify, as well as the claims raised in those cases and the final disposition can be considerable. A *pro se* prisoner's affirmative misrepresentations of his litigation history will not be tolerated. If the Court cannot rely on the statements or responses made by litigants, the quality of justice is threatened. The Court will not tolerate false responses or statements in any pleading or motion filed.

Knowing that accurate disclosure of his litigation history was required, and dismissal of the instant action might result from any untruthful answers, if Plaintiff suffered no penalty for his responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form. Furthermore, if word spreads around the prisons that the questions on the

complaint form could be circumvented in such a manner, the Court might be confronted with widespread abuse from its many prisoner litigants. The Court should not allow Plaintiff's misrepresentations to go unpunished. Plaintiff was provided ample opportunity to properly amend; and the Court warned that failure to make truthful disclosures would result in a recommendation of dismissal. ECF No. 5. Plaintiff will not be prejudiced by this dismissal. He may refile his claims in a new case, on the proper form and making the requisite disclosures, subject to a new filing fee and case number.

## VII.    Conclusion and Recommendation

It is **ORDERED** that, Plaintiff's second motion to proceed IFP, ECF No. 9, is **DENIED WITHOUT PREJUDICE** because the inmate account statements contradict Plaintiff's statements made on the prisoner consent form and financial certificate. Plaintiff's "Motion for Court Order Directing FDOC to Provide Clerk Plaintiff['s] Financial Cert[ificate] and 6[-]month Statement," ECF No. 10, is **DENIED AS MOOT**.

For the reasons stated, it is respectfully **RECOMMENDED** that the case be **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i) as malicious because Plaintiff made affirmative misrepresentations relating to his litigation history and because the complaint is a shotgun pleading. The case should be **CLOSED** with an

order adopting this Report and Recommendation directing the Clerk of Court to note on the docket that this cause was **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and counts as a strike.

**IN CHAMBERS** this 1st day of October, 2023.

          s/ Martin A. Fitzpatrick
          **MARTIN A. FITZPATRICK**
          **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).